2024 PA Super 20

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN EVANGALIST PERALTA | : | |
| | : | |
| Appellant | : | No. 291 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 21, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004236-2021

BEFORE: BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

OPINION BY BENDER, P.J.E.:                **FILED: FEBRUARY 8, 2024**

Juan Evangalist Peralta, Appellant, appeals from the judgment of sentence of 45 to 90 days of incarceration following his conviction for illegally operating a vehicle not equipped with an ignition interlock. Appellant argues that the Commonwealth failed to prove that he was required to only drive vehicles that contained such equipment. After careful review, we determine that the Commonwealth failed to prove Appellant had adequate notice of his obligations, as the statute required the Department of Transportation ("PennDOT") to inform Appellant of his ongoing obligation to drive with an interlock device unless and until he obtained an unrestricted license. We thus reverse Appellant's conviction and vacate his judgment of sentence for that offense. We affirm his judgment of sentence in all other respects.

On August 17, 2021, Sergeant Mark McCreary was monitoring traffic when his license plate reader triggered an alert that a passing vehicle's

registration was expired.[1]  After confirming the result, Sergeant McCreary stopped the vehicle, which was driven by Appellant.  Appellant handed over an expired registration, expired insurance cards, and his driver's license, which "indicated the ignition interlock requirement."  N.T., 11/16/22, at 22.  The Commonwealth introduced photographs and body camera footage showing the interior of the vehicle, which did not contain an ignition interlock device.

The Commonwealth entered into evidence a copy of Appellant's certified driving history provided by PennDOT to the Commonwealth.  That document showed that Appellant refused breath testing on July 21, 2018, resulting in a one-year suspension effective September 7, 2018.  The history further states that his operating privileges were restored on January 14, 2020.  Additionally, there is a section with a header line of "interlock limited license (II LL)."  Below this heading, the following fields are listed, each of which is blank: II LL License Class; II LL License Issued; II LL License Expires; II LL License Status.  *Id.* at 62 (Commonwealth's Exhibit C-2) (some capitalization omitted).  However, at a different part of the same page, below Appellant's date of birth and sex, the following text appears: "Record Type: Ignition Interlock License."  *Id.*

The trial court questioned Sergeant McCreary about these entries, observing that the document "just says restoration of operating privileges

---

[1] The vehicle was not registered to Appellant.

January 14, 2020. So that would indicate that … his operating privileges were restored. Now, that may mean that he still was under this additional requirement of the interlock[,] but his operating privileges are restored. It doesn't say that." *Id.* at 48. The officer replied, "I would agree with you. That was how I interpreted it." *Id.* The trial court additionally remarked, "Okay. Explain to me why it would … appear that … according to the first page[,] there's no information about an interlock limited license. And then at the bottom of the second page it says that he is restored in January of '20." *Id.* at 49. Sergeant McCreary pointed out that the first page of the document indicated that Appellant had an ignition interlock license, and he reiterated that Appellant was in possession of a driver's license that had an interlock designation.

Appellant was convicted of one count of illegally operating a motor vehicle not equipped with ignition interlock, 75 Pa.C.S. § 3808, as well as the summary offenses of unlawfully operating a vehicle without an emission inspection sticker and unlawfully operating a vehicle without a certificate of inspection. The trial court imposed the above-stated sentence on Appellant. Appellant filed a timely post-sentence motion, which was denied, and a timely notice of appeal from that order. Appellant then filed a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. The trial court filed a Rule 1925(a) opinion, and we now review Appellant's two appellate claims:

> 1. Whether the evidence adduced at trial was insufficient to support the verdict in that the Commonwealth failed to establish

- 3 -

beyond a reasonable doubt the elements of illegally operating a motor vehicle not equipped with ignition interlock?

2. Whether the verdicts of guilty of illegally operating a motor vehicle not equipped with ignition interlock, unlawful operation of vehicle without emission inspection, and operation of vehicle without official certificate of inspection was contrary to the weight of the evidence presented at trial?

Appellant's Brief at 8 (footnotes omitted).[2]

Appellant's first issue challenges the sufficiency of the evidence to convict him of the interlock offense. Our standard of review is well-settled:

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa. Super. 2009) (citations omitted).

Before discussing the parties' arguments, for ease of disposition, we first set forth the relevant statutes and Appellant's obligations under those provisions. As a prefatory matter, the definition section of the Vehicle Code, 75 Pa.C.S. § 102, defines the term "ignition interlock limited license" ("IILL") as follows:

---

[2] Appellant stated in the accompanying footnotes that, upon further review, his challenges to the weight and sufficiency of the summary offenses are without merit. As such, he has abandoned those challenges on appeal, and we do not address them.

> A driver's license issued to an individual whose operating privilege is suspended or revoked for one or more violations under section 1547 (relating to chemical testing to determine amount of alcohol or controlled substance) or 3802 (relating to driving under influence of alcohol or controlled substance) or under former section 3731 (relating to driving under influence of alcohol or controlled substance) or a violation substantially similar to a violation under section 3802 or former section 3731 in another jurisdiction, requiring the individual to operate only motor vehicles equipped with a functioning ignition interlock system.

75 Pa.C.S. § 102.

Next, Section 3808(a) of the Vehicle Code codifies the criminal offense at issue, as follows:

> **(a) Offense defined.--**
>
> (1) An individual required to only drive, operate or be in actual physical control of the movement of a motor vehicle equipped with an ignition interlock system under any of the following who drives, operates or is in actual physical control of the movement of a motor vehicle within this Commonwealth without such a system commits a misdemeanor and shall, upon conviction, be sentenced to pay a fine of not less than $300 and not more than $1,000 and to imprisonment for not more than 90 days:
>
>> (i) Section 1556 (relating to ignition interlock limited license).
>>
>> (ii) Section 3805 (relating to ignition interlock).
>>
>> (iii) A requirement by another jurisdiction to operate only a vehicle with an ignition interlock system.

75 Pa.C.S. § 3808(a).

Sections 3808(a)(1)(i) and (ii) govern when an individual must obtain an IILL. For ease of discussion, we begin with the first four subsections of Section 3805:

**(a) General rule.--**Except as provided under subsection (a.1), if a person violates section 3802 (relating to driving under influence of alcohol or controlled substance) or has had their operating privileges suspended pursuant to section 1547 (relating to chemical testing to determine amount of alcohol or controlled substance) or 3808(c) (relating to illegally operating a motor vehicle not equipped with ignition interlock) and the person seeks a restoration of operating privileges, the department shall require as a condition of issuing a restricted license pursuant to this section that the following occur:

(1) Any motor vehicle to be operated by the individual has been equipped with an ignition interlock system and remains so for the duration of the restricted license period.

(2) If there are no motor vehicles owned or to be operated by the person or registered to the person that the person so certify to the department in accordance with the department's regulations.

**(a.1) Exception.--**Subsection (a) shall not apply to an individual who meets all of the following:

(1) Is subject to the penalties under section 3804(a)(1) (relating to penalties) or subject to mandatory suspension of operating privilege under section 3807(d) (relating to Accelerated Rehabilitative Disposition).

(2) Has not had a prior offense, as defined under section 3806 (relating to prior offenses).

**(b) Application for a restricted license.--**A person subject to this section shall apply to the department for an ignition interlock restricted license[3] under section 1951 (relating to driver's license and learner's permit), which shall be clearly marked to restrict the person to only driving, operating or being in actual physical control of the movement of motor vehicles equipped with an ignition interlock system.  Upon issuance of an ignition interlock restricted

_____

[3] The phrase "ignition interlock restricted license" is not defined.  As noted *supra*, the definitions section of the Vehicle Code defines the phrase "ignition interlock limited license."  Moreover, Section 1951 of the Vehicle Code is the general provision for issuing licenses and it does not contain any reference to IILLs.  In context, it appears the word "restricted" is used in the ordinary sense.

license to any person, the department shall notify the person that until the person obtains an unrestricted license the person may not drive, operate or be in actual physical control of the movement of any motor vehicle which is not equipped with an ignition interlock system.

**(c) Issuance of unrestricted license.--**One year from the date of issuance of an ignition interlock restricted license under this section, if otherwise eligible, a person may be issued a replacement license under section 1951(d) that does not contain the ignition interlock system restriction. The department shall not issue an unrestricted license until a person has presented all of the following:

(1) Proof that the person has completed the ignition interlock restricted license period under this section.

(2) Certification by the vendor that provided the ignition interlock device that the person has complied with subsection (h.2).

**(d) Prohibition.--**Except as set forth in subsections (e) and (f), until the person obtains an unrestricted license, the person may not own, register, drive, operate or be in actual physical control of the movement of any motor vehicle within this Commonwealth unless the motor vehicle is equipped with an ignition interlock system.

75 Pa.C.S. § 3805(a)-(d).

According to the certified driving record, Appellant refused chemical testing and received a 12-month license suspension, as set forth by Section 1547(b)(1)(i) of the Vehicle Code:

**(b) Civil penalties for refusal.--**

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa.C.S. § 1547(b)(1)(i).

Due to this suspension, Appellant was required to obtain an IILL by virtue of Section 3805(a) if he wished to have his operating privileges restored. According to the certified driving record, Appellant's operating privileges were restored on January 14, 2020. Because Appellant possessed a driver's license indicating that he was required to use an ignition interlock device, it follows that he applied for the IILL. Subsection (b) required Appellant to "apply to the department for an ignition interlock restricted license," and once that license was issued, subsection (c) is triggered. That subsection states that the person must use the ignition interlock system for a period of one year. Afterwards, the person may apply for a regular driver's license without the restrictions.

Subsection (d), which states that "until the person obtains an unrestricted license, the person may not own, register, drive, operate or be in actual physical control of the movement of any motor vehicle within this Commonwealth unless the motor vehicle is equipped with an ignition interlock system," is relevant because the incident date in this case was more than one year after Appellant was eligible to apply for a regular license. Accordingly, the plain text of the statute means that Appellant was required to drive with an ignition interlock system unless and until he satisfied statutory criteria for obtaining an unrestricted license.

To obtain that license, the statute requires the holder of an IILL to prove their compliance with whatever ignition interlock device the operator selected.

"An ignition interlock system required to be installed under this title must be a system which has been approved by the department. The department's approval of ignition interlock systems shall be published in the Pennsylvania Bulletin." 75 Pa.C.S. § 3805(h). Subsection (h.2) requires the vendor to certify compliance, and the IILL holder must provide that documentation to PennDOT. 75 Pa.C.S. § 3805(c)(2). Additionally, as cited within this subsection, Section 1556 deals with IILLs. Subsection (a) of that statute addresses the general standards for issuing an IILL as follows:

**(a) Issuance.--**

(1) The department shall issue an ignition interlock limited license under this section to an individual whose operating privileges have been suspended or revoked for:

\*\*\*

(ii) a refusal to submit to chemical testing under section 1547 (relating to chemical testing to determine amount of alcohol or controlled substance).

(2) The department shall issue an ignition interlock limited license under the provisions of this section only upon receiving proof that any motor vehicle to be operated by the individual has been equipped with an approved ignition interlock system as defined in section 3801 (relating to definitions) as a condition of issuing an ignition interlock limited license. Any vehicle to be operated by the individual, during any period in which the individual holds a valid ignition interlock limited license, must be equipped with an ignition interlock system.

(3) An ignition interlock limited license issued under the provisions of this section permits an individual to operate motor vehicles equipped with a functioning ignition interlock system, as defined in section 3801.

(4) Any period in which an individual holds a valid ignition interlock limited license under this section shall be counted

toward satisfaction of any mandatory period of ignition interlock use imposed under section 3805 (relating to ignition interlock) arising from the same incident.

75 Pa.C.S. § 1556(a).[4]

With these provisions in mind, we now set forth the parties' arguments. Appellant cites the certified driving history, which established that his driving privileges were restored on January 14, 2020, and emphasizes that the first page of that document "fails to provide any information in the 'Interlock Limited License' column but does note that his driver's license issue date was Jan. 14, 2020." Appellant's Brief at 28. Appellant argues that Section 3808 is not a strict liability offense, citing analogous cases holding that the Commonwealth must establish notice that an offender was aware that their license had been suspended. Appellant argues that the Commonwealth failed to show that PennDOT complied with Section 3808(b), which states PennDOT

_____

[4] The reference in paragraph (4) of time counting towards the mandatory requirements of Section 3805 is because other portions of Section 1556 permit individuals whose license is suspended due to certain DUI offenses to request an IILL before their full period of suspension expires. In Appellant's case, the underlying basis for using an IILL was a suspension under 75 Pa.C.S. § 1547(b)(1)(i). He would have been eligible to request an IILL six months into his suspension pursuant to Section 1556(f):

**(f) Suspension eligibility.--**The following shall apply:

(1) An individual whose license has been suspended under section 1547(b) shall be eligible to apply for and, if otherwise qualified, be issued an ignition interlock limited license under this section if the individual:

(i) has served six months of the suspension imposed under section 1547(b)(1)(i)….

75 Pa.C.S. § 1556(f).

- 10 -

"shall notify the person that until the person obtains an unrestricted license the person may not drive, operate or be in actual physical control of the movement of any motor vehicle which is not equipped with an ignition interlock system." 75 Pa.C.S. § 3805(b). Appellant argues that he cannot be expected to show that he did not receive this notice, as this would force him to prove his own innocence.

The Commonwealth, in contrast, does not view its failure to show that the Section 3808(b) notice requirements were given as relevant because of the principle that ignorance of the law is no excuse. The Commonwealth argues that the statute put Appellant on notice of his obligations, as the statute specified that an IILL holder must use an ignition interlock device until a replacement license is issued and, to obtain that license, Appellant had to prove to PennDOT that he complied with the ignition interlock requirements.

Whether this statute requires notice and, if so, what type of notice, appears to be an issue of first impression. We agree with Appellant that precedents involving 75 Pa.C.S. § 1543 are analogous. Section 1543(b) of the Vehicle Code states that a person is guilty of that offense if he or she "drives … at a time when the person's operating privilege is suspended or revoked" due to certain enumerated offenses related to DUIs. Case law holds that the Commonwealth is required to show that the offender had notice of the suspension. Appellant cites **Commonwealth v. Crockford**, 660 A.2d 1326, 1327 (Pa. Super. 1995) (*en banc*), which aptly summarized the applicable principles of law. "The seminal case in this area is **Commonwealth**

*v. Kane*, … 333 A.2d 925 ([Pa.] 1975), which held that it is necessary for the Commonwealth to prove that the accused had actual notice of suspension in order to convict of driving while under suspension." *Id.* at 1328. "Notice is, therefore, a judicially created element, designed to protect a defendant's due process rights." *Id.* at 1329.

The *Kane* holding recognizes that there is often a lag between a conviction and the collateral consequence of license suspension. We see that gap here; the certified driving record shows that Appellant refused a breath test on July 21, 2018, and the official notice of suspension was mailed August 3, 2018, and made effective September 7, 2018. Without notice, Appellant would not know when his license became suspended. Thus, we agree that notice of the ignition interlock restriction is necessary.

Briefly, we note that Appellant describes this notice component as implicating *mens rea.* "The term *mens rea* is Latin for guilty mind and is defined as '[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime[.]'" *Commonwealth v. Andre*, 17 A.3d 951, 958 (Pa. Super. 2011) (citation omitted; bracketing in original). The General Assembly has enacted Section 302 of the Crimes Code, which supplies defaults in the absence of a statutory *mens rea* requirement. *Commonwealth v. Moran*, 104 A.3d 1136, 1149 (Pa. 2014) (stating that our Supreme Court has "repeatedly held § 302 provides the default level of culpability where a criminal statute does not include an express *mens rea*"). Under the default provision of Section 302(c),

"[w]hen the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa.C.S. § 302(c).

Notwithstanding, the parties' dispute is not about culpability but rather whether the Commonwealth must show notice as contemplated by precedents like **Crockford**. The rationale of those cases is not grounded in *mens rea* in terms of conduct but rather notice as a component of procedural due process. Indeed, both Section 1543(b) and Section 3808 of the Vehicle Code seem to establish a strict liability scheme, as the decision to drive while knowing that their license is suspended (Section 1543) or that their license is restricted by an ignition interlock requirement (Section 3808) suffices to establish liability if the individual chooses to drive while knowing of those restrictions. Thus, the offense seems to establish strict liability, as it is awareness of the restrictions that creates liability, not any "guilty mind" with respect to the conduct itself. **See, e.g.**, **Commonwealth v. Samuels**, 778 A.2d 638, 643 (Pa. 2001) (Saylor, J., concurring) ("[I]t is widely accepted that the legislative branch may impose absolute liability for 'public welfare offenses' to promote the public welfare by enforcing compliance with regulatory schemes."); **Commonwealth v. Collins**, 810 A.2d 698, 703 (Pa. Super. 2002) (rejecting a claim that the Commonwealth was required to prove that a DUI defendant voluntarily ingested the intoxicant as the statute lacked a culpability provision;

"We interpret this omission to mean that the legislature intended Driving Under the Influence to be a strict or absolute liability offense.").

We conclude that the Commonwealth was required to establish Appellant had notice of that restriction. However, we note that there are two separate types of notice at issue. The first is notice that Appellant was not permitted to operate a motor vehicle unless it had an ignition interlock device installed. While the Commonwealth did not show that PennDOT sent any type of documentation beyond Appellant's license suspension for refusing a breath test, an obvious indicator that Appellant had notice is the fact that he possessed an IILL. The statutory framework establishes that PennDOT does not issue this license on its own initiative. Instead, upon restoration of operating privileges, the individual can request an IILL. That Appellant physically possessed his IILL card is sufficient proof that he had actual notice that his license was restricted.

The second type of notice is whether Appellant had notice that, by virtue of having an IILL, he was not to operate a vehicle without an ignition interlock device until he obtained a replacement license, even if the one-year time period had elapsed. One answer to this question is the foregoing: by having an IILL, Appellant knew he was limited to using vehicles with an ignition interlock device. The other answer is that having an IILL is not enough, because that does not necessarily tell you how long you must comply with the restriction. The Commonwealth urges the former, while Appellant asks this Court to adopt the latter.

The Commonwealth's position relies on the proposition that ignorance of the law is no excuse. **See Cheek v. United States**, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system."). As set forth *supra*, the statute's plain language supplies the requisite notice.

We are not persuaded that application of this maxim should prevail, as this argument overlooks the General Assembly's instruction within Section 3805(b) that PennDOT must inform an IILL holder of the ignition interlock requirement. The Commonwealth's reliance on the general rule writes out this language. We acknowledge that the textual command could be interpreted as a courtesy: PennDOT was required to tell Appellant that, until he obtained an unrestricted license, he was not permitted to drive unless the vehicle had an ignition interlock device, but if PennDOT failed to do so, the onus is still on the offender consistent with the general principle that ignorance of the law is no excuse. However, we conclude that this interpretation is not consistent with legislative intent. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). The Commonwealth's interpretation makes the notice requirement entirely superfluous. "We are not permitted to ignore the language of a statute, nor may we deem any

language to be superfluous." **Commonwealth v. McCoy**, 962 A.2d 1160, 1168 (Pa. 2009).

If the General Assembly intended that the notice provision was irrelevant to the motorist's duty to comply, it could have clearly stated that point. In this regard, the General Assembly has stated in the Sexual Offender and Registration Notification Act ("SORNA") context that a failure to inform is irrelevant to the registrant's duties. That statute is analogous because, like license suspensions, sexual offender obligations are collateral consequences that flow from a criminal conviction. **See Commonwealth v. Smith**, 240 A.3d 654, 657–58 (Pa. Super. 2020) (noting that our Supreme Court has deemed Subchapter I of SORNA to be non-punitive; "Non-punitive, administrative requirements are merely collateral consequences of a criminal conviction."); **see also Commonwealth v. Duffey**, 639 A.2d 1174, 1176 (Pa. 1974) ("Courts of this Commonwealth have consistently recognized that a license suspension is a collateral civil consequence of a criminal conviction."). Collateral obligations, in turn, may impose further requirements that, if not followed, subject the offender to criminal penalties. Again, SORNA is readily comparable. A person who is required to register as a sex offender is subject to criminal penalties if he or she fails to comply with those requirements. Similarly, a person who has an IILL is required to use an ignition interlock device and is subject to criminal penalties if he or she fails to comply with their requirement to use an ignition interlock device. Section 9799.20 states:

In order to implement the provisions of section 9799.19 (relating to initial registration), as appropriate, the Pennsylvania State Police, the court having jurisdiction over the sexual offender, the chief juvenile probation officer of the court and the appropriate official of the Department of Corrections, county office of probation and parole, the Department of Human Services or a State or county correctional institution shall:

> (1) Inform the individual required to register of the individual's duties under this subchapter.

> (2) Require the individual to read and sign a form stating that the duty to register has been explained and that the individual understands the registration requirement.

> (3) Collect the information required under section 9799.16(b) and (c) (relating to registry) and forward the information to the Pennsylvania State Police for inclusion in the registry as set forth in this subchapter.

42 Pa.C.S. § 9799.20.

Section 9799.20 itself does not address any consequences of a failure to inform. However, Section 9799.23 — which addresses a trial court's duties to inform certain individuals who are sentenced, adjudicated delinquent, or committed for involuntary treatment of their registration obligations — states that a "[f]ailure by the court to provide the information required in this section, to correctly inform a sexual offender of the sexual offender's obligations or to require a sexual offender to register shall not relieve the sexual offender from the requirements of this subchapter." 42 Pa.C.S. § 9799.23(b)(1). Similarly, the statute addressing the periodic verification duties of a sexual offender requires the Pennsylvania State Police to send notice by mail to "facilitate the process of verification of information[.]" 42 Pa.C.S. § 9799.25(c). That statute likewise clarifies that any failure to do so does not relieve the offender

of their obligations. 42 Pa.C.S. § 9799.25(d). Similar provisions appear in Subchapter I of SORNA, which applies to offenders whose offenses predated the enactment of SORNA in 2012.

Our recent decision in **Commonwealth v. Roberts**, 293 A.3d 1221, 1226 (Pa. Super. 2023), *appeal granted*, 2023 WL 5923298 (Pa. Sept. 12, 2023), supports our conclusion that these statutes are relevant to our analysis. In that case, Roberts was subject to lifetime registration due to a conviction and required to report annually to the Pennsylvania State Police. In 2020, he failed to appear for his annual appearance, and was charged. Roberts argued that "there was insufficient proof of his *mens rea* under 18 Pa.C.S.[] § 4915.2(a)(1), (2)," which supplies a *mens rea* of "knowingly." **Id.** at 1225. We observed that "the statute does not require proof that Roberts knew of his lifelong-registration requirement." **Id.** We concluded that that the General Assembly, "when enacting SORNA, codified the ancient maxim that ignorance of the law is no excuse. Roberts may not excuse noncompliance with SORNA based on alleged ignorance of his lifetime-registration obligation." **Id.** at 1226 (quotation marks and citation omitted). Notably, citing the statutory provisions stating that the failure to inform is irrelevant to the offender's obligations, we stated "there is no notice requirement in SORNA. The statute expressly negates and disclaims such a requirement." **Id.**

While **Roberts** reaches the opposite conclusion in terms of result, we deemed relevant the fact that the statute "negates and disclaims" any notice

requirement. Section 3805(b), in contrast, requires notice but is silent as to what happens if PennDOT fails to comply (or, by extension, if the Commonwealth fails to prove that the notice was given). We therefore deem the notice requirement to be a key part of legislative intent.

We determine that the placement of this obligation is relevant as well. If this obligation were merely promulgated as a regulation, the Commonwealth's argument would be far more compelling. But Section 3808, which sets forth the substantive elements of the crime, incorporates within its definition Section 3805. By codifying the notice requirement within Section 3805(b), the General Assembly made notice an integral part of the statute. While notice is not an element of the crime, we find that the General Assembly intended for the notice function to protect due process rights. Thus, the Commonwealth was required to show notice.

Finally, we conclude that the notice provision indeed protects a citizen's due process rights. The General Assembly's intent in this regard is arguably not controlling; as we stated in **Crockford**, **supra** at 1329, "[n]otice is … a judicially created element, designed to protect a defendant's due process rights." But two points warrant paying particular attention to the General Assembly's intent. First, the statutory notice requirement reflects a legislative intent to override the maxim that ignorance of the law is no excuse. Second, the General Assembly may have required PennDOT to give notice because a person may reasonably assume that once the one-year period has expired, as it did in this case, that full restoration of driving privileges is automatic. While

an offender is statutorily required to certify their compliance, it would not be unreasonable for a person to think that the ignition interlock device automatically reported its usage statistics. Relatedly, an offender who is aware of their duty to certify may think that their obligation ceases unless their application for an unrestricted license is rejected.[5] The complexity of the statute justifies a conclusion that notice is needed to sustain a conviction. Because the Commonwealth failed to show that PennDOT satisfied its Section 3805(b) obligation, we conclude that reversal of Appellant's conviction for illegally operating a motor vehicle not equipped with an ignition interlock is warranted.[6]

Conviction for illegally operating a motor vehicle not equipped with ignition interlock is reversed. Judgment of sentence for that conviction vacated. Judgment of sentence at the remaining summary offenses affirmed.[7]

---

[5] The certified driving history is confusing in this regard, as the fields indicating when Appellant's IILL was issued and/or expired are blank.

Additionally, as the trial judge's questions at trial reflect, the fact that Appellant's operating privileges were restored is confusing. In truth, operating privileges in this context are better described as conditionally restored. The requirement that the driver use an ignition interlock device is an additional condition that must be followed for one year before full operating privileges are restored.

[6] Due to our disposition, we need not address Appellant's weight claim pertaining to his conviction for illegally operating a motor vehicle not equipped with ignition interlock.

[7] Because Appellant has served the maximum period of incarceration and no probationary sentence was imposed, there is no need to remand for resentencing.

Judge Bowes joins this memorandum.

Judge Sullivan concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/08/2024