J-A02003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH PAUL CRESSWELL | : | |
| | : | |
| Appellant | : | No. 583 WDA 2024 |

Appeal from the Judgment of Sentence Entered April 25, 2024
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0001105-2023

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:　　　　　**FILED: MARCH 21, 2025**

Joseph Paul Cresswell appeals from the judgment of sentence entered after he was convicted of persons not to possess firearms and endangering the welfare of children.[1]  Cresswell argues that the evidence was insufficient to sustain his firearm conviction and that the trial court should have granted a mistrial.  We affirm.

Police charged Cresswell with the above crimes on July 24, 2023.  The charges arose on July 23, 2023, when Cresswell's one-year-old son A.C. severely injured himself by discharging a sawed-off shotgun.  Although Cresswell was not in the house when the child was injured, police alleged that Cresswell had possessed and modified the weapon.

---

[1] 18 Pa.C.S. §§ 6105(a)(1) and 4304(a)(1), respectively.

Cresswell waived his right to trial counsel. To protect Cresswell from potential prejudice, the trial court ordered that the firearm charge would be tried first, separately from the charge of endangering the welfare of children. Thus, the issue at trial was whether Cresswell, who had prior felony convictions, possessed the firearm that the police recovered. The parties and trial court generally understood that the jury would not hear about A.C.'s injury, although no pretrial evidentiary order appears in the record.

The Commonwealth's first witness at trial was Faith Hartshorn, who testified that she had previously lived with Cresswell at 614 Spring Street in Jamestown, Pennsylvania. Her six children, including two of Cresswell's, lived with them. Hartshorn testified that she and Cresswell shared a bed in the upstairs bedroom.

Hartshorn testified that at noon on July 23, 2023, a weapon discharged in the bedroom. Throughout her testimony, Hartshorn denied ever seeing Cresswell with the sawed-off shotgun. However, she acknowledged that Cresswell was the person who modified the gun and that he possessed the gun in order to do so. Hartshorn further acknowledged that a photograph of the shotgun fairly and accurately depicted the weapon that was recovered from the upstairs bedroom, while continuing to deny that she saw Cresswell with the gun. She explained her denial and mentioned A.C.:

> Q. I'm showing you what we have marked as Commonwealth's Exhibit 8. Is that the weapon that was recovered from your bedroom?
>
> A. Yes.

Q. Okay. . . . [D]oes the photo fairly and accurately depict the weapon?

. . .

A. Yes.

Q. Was that a weapon that you previously saw in possession of Mr. Cresswell?

A. No.  I went to bed.  We were arguing that night.  I went to bed, and **I woke up to [A.C.] the next day**.

> THE COURT: Hold on.  Stop right there.
>
> [The District Attorney]: I didn't hear your answer.
>
> THE COURT: Go ahead.

THE WITNESS: I didn't know what it looked like.  I woke up to that.  We were arguing the night before, and I went to bed and **I woke up to [A.C.]**.

N.T., Trial Vol. I, 2/13/24, at 34–35 (emphasis added).

Cresswell objected.  At sidebar, Cresswell moved for a mistrial.  The trial court explained its evidentiary order and denied a mistrial:

[Cresswell]: You told me we could not bring [A.C.] into this trial, and that is clearly -- [the District Attorney] let her bring [A.C.].

THE COURT: So the order was that we can't discuss that [A.C.] was shot.  She said she woke up to [A.C.].

[The District Attorney]: I didn't solicit it.

THE COURT: I stopped her.  She just said she woke up to [A.C.].

[Cresswell]: He's leading.  Every question is did you not; yes.  He's making her answer for her.

THE COURT: So far not yet, but he's getting close.

[Cresswell]: She clearly does not want to be on the stand.  He's telling her she has to answer when she don't.

[The District Attorney]: Which is why she's a hostile witness.

THE COURT: I agree with that. So the motion for mistrial is denied.

*Id.* at 35–36.

The Commonwealth continued to question Hartshorn, who mentioned A.C.'s injury while explaining why she did not remember her prior statements:

Q. Isn't it true, ma'am, that at the scene you were interviewed by a state trooper?

A. Yeah.

Q. Isn't it true that at the time you told that state trooper that the day before you saw Joseph Cresswell with that weapon?

A. I don't remember.

[Cresswell]: Objection, Your Honor.

THE COURT: Basis?

THE WITNESS: I don't remember. **My baby's leg just got blown off.** I don't remember what --

*Id.* at 36 (emphasis added).

The trial court promptly excused the jury. Outside of the presence of the jury, the trial court instructed Hartshorn not to discuss A.C. or his injuries. The district attorney indicated that he had not elicited Hartshorn's testimony. Although Cresswell did not move for a mistrial at the time, he emphasized that the jury had just heard that A.C.'s leg had been blown off. The trial court denied a mistrial. When the jury returned minutes later, the trial court provided a curative instruction:

Ladies and Gentlemen of the Jury, as we have discussed several times, this case is limited to whether or not Mr. Cresswell was prohibited by law from possessing a firearm, and can the Commonwealth prove beyond a reasonable doubt that he in fact possessed a firearm. Any of the other issues that occurred that

- 4 -

day, any accidents, any injuries, are completely irrelevant and cannot be considered. You've already heard testimony that Mr. Cresswell was not even in the home at the time. So those issues are irrelevant.

*Id.* at 38–39.

On direct examination, Hartshorn continued to deny seeing Cresswell with the shotgun. She maintained that the weapon was in the garage before it was in the upstairs bedroom. Hartshorn admitted that neither she nor any of the children took the shotgun from the garage to the bedroom.

Chief Danielle Downing of the Jamestown Police Department testified that she found the shotgun in the upstairs bedroom on July 23, 2023. She stated that she secured the weapon in her patrol cruiser. Chief Downing related that Hartshorn told her that Cresswell was working on putting together a gun the night before.

Pennsylvania State Police Trooper Zachary Julian testified that he located Cresswell in Kinsman, Ohio. Trooper Julian received a copy of a recorded phone call and identified the male voice in the call as Cresswell's. The Commonwealth played an excerpt of the call, in which Cresswell stated, "the one time I brought a loaded gun in the house, that's what happened."

Finally, Trooper Joseph Morris testified how the shotgun appeared recently modified. The Commonwealth entered the shotgun into evidence.

The jury found Cresswell guilty of the firearm offense. Cresswell later entered a guilty plea to endangering the welfare of children, reserving his right to appeal certain issues. The trial court sentenced Cresswell to five to ten years of imprisonment and three years of probation. Cresswell filed post-

sentence motions, which the trial court denied. Cresswell timely appealed. Cresswell and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Cresswell presents two issues for review:

Whether the trial court abused its discretion and committed reversible error when it failed to find that the jury's verdict was based on insufficient evidence.

Whether the trial court abused its discretion and committed reversible error by not declaring a mistrial when references [were] made to an injury to a minor child as well as other reverences to minor child[ren] in the home at trial, implicating prosecutorial misconduct.

*See* Creswell's Brief at 6–7.

Creswell first challenges the sufficiency of the evidence to sustain his conviction for persons not to possess firearms. He argues that there is no evidence that he possessed the sawed-off shotgun.

When this Court reviews a challenge to evidentiary sufficiency, we follow a well-settled standard:

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Peralta*, 311 A.3d 1, 4 (Pa. Super. 2024) (quoting *Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa. Super. 2009)).

- 6 -

Here, the evidence was sufficient to prove that Cresswell was in actual possession of the sawed-off shotgun that Chief Downing found in the upstairs bedroom. Hartshorn testified that the gun had been in the garage, and neither she nor any of the children had brought it up to the bedroom. While Hartshorn denied at trial that she had seen Cresswell with the weapon, Chief Downing testified that Hartshorn said Cresswell was working on putting together a gun. Trooper Morris testified how the gun was modified. Additionally, Trooper Julian obtained a recorded phone call in which Cresswell mentioned that he "brought a loaded gun in the house." The jury could consider all of this evidence to conclude that Cresswell modified the shotgun and took it to the upstairs bedroom. As Hartshorn acknowledged, Cresswell possessed the gun in order to modify it. Therefore, the evidence was sufficient for the jury to find that Cresswell was in possession of a firearm. Cresswell's first issue fails.

Cresswell next challenges the denial of a mistrial after Hartshorn said, "My baby's leg just got blown off." Although the trial court issued a curative instruction, Cresswell argues that the instruction was not given immediately and therefore could not mitigate the significant prejudice from the utterance. Cresswell further contends that the repeated references to children being in the house amounted to prosecutorial misconduct, such that a retrial should be barred.

A mistrial is an "extreme remedy" within the trial court's discretion. ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1287 (Pa. Super. 2004) (*en banc*). Accordingly, we review the denial of a mistrial to determine

whether the trial court abused its discretion. ***Commonwealth v. Nasir***, 308 A.3d 812, 819 (Pa. Super. 2023).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

***Commonwealth v. Chamberlain***, 30 A.3d 381, 422 (Pa. 2011) (citations and quotations omitted). Notably, spontaneous "emotional outbursts against the defendant by a family member, and references to unrelated prior criminal activity can be cured by the trial court giving curative instructions to the jury." ***Commonwealth v. Savage***, 602 A.2d 309, 312 (Pa. 1992).

Here, the trial court acted within its discretion when it did not grant a mistrial. As the trial court recognized, Hartshorn's utterance "was not elicited by the Commonwealth but rather resulted from an unsolicited outburst." Once Hartshorn mentioned A.C.'s leg being "blown off," the trial court consulted with the parties outside the presence of the jury. The trial court provided a curative instruction minutes later. Cresswell does not show how the short delay between Hartshorn's statement and the jury's return would render the curative instruction ineffective. As to prosecutorial misconduct, we observe that none of the district attorney's questions called for responses that violated the trial court's rulings. Because Hartshorn's unsolicited statement did not

deprive Cresswell of a fair trial and the trial court issued an appropriate curative instruction, the trial court did not abuse its discretion when it failed to grant a mistrial. Cresswell's second issue fails.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/21/2025